UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROWLAND E. JAMES,

      Plaintiff,

v.                                  Case No: 8:14-cv-273-T-36EAJ

QUALITY DISTRIBUTION, INC. and
QUALITY CARRIERS, INC.,

      Defendants.

_____/

## ORDER

      This cause comes before the Court upon the Dispositive Motion for Summary Judgment filed by Defendants Quality Distribution, Inc. and Quality Carriers, Inc. ("QC") (collectively, "Defendants") (Doc. 31).  Plaintiff Rowland E. James responded in opposition to the Motion (Doc. 40), and Defendants replied in further support of their Motion (Doc. 42).  The Court, having considered the parties' submissions and being fully advised in the premises, will now GRANT Defendants' Motion.

## I.     STATEMENT OF FACTS[1]

      This is an action for breach of contract and malicious prosecution.  QC is a national transportation company whose business is primarily in the shipping of bulk chemical products.[2]  One of QC's independent affiliates in Louisiana is Gulf Coast Express Carriers, Inc. ("Gulf Coast"), a locally owned and operated trucking company.  Doc. 33 ("Warner Dep.") at 22; Sorine Dep. at 189.  James owned, and worked for, 2BBG Express LLC ("2BBG Express"), a Louisiana

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, stipulated facts, affidavits, and deposition testimony.
[2] Quality Distribution, Inc. is QC's parent/holding company.  Doc. 32 ("Sorine Dep.") at 4, 18-19.

limited liability company that provided truck driving services.  Doc. 34 ("James Dep.") at 14-15, 17, 26.   Neither Gulf Coast nor 2BBG Express are parties to this litigation.

On September 15, 2010, 2BBG Express entered into a lease agreement with Gulf Coast, pursuant to which 2BBG Express leased a Freightliner tractor (the "Truck") from Gulf Coast for $370.84 a week.  James Dep. at 50-51; Doc. 41-3 ("Lease Agmt.").  Later that month, on September 20, 2BBG Express also entered into an Independent Contractor Agreement with QC, pursuant to which 2BBG Express agreed to make the Truck available to deliver shipments for QC customers.  James Dep. at 15, 53; Doc. 41-5 ("IC Agmt.") ¶ 1(a).

In the week of March 21, 2011, Gulf Coast dispatch attempted to contact James to arrange a delivery.  Doc. 35 ("Smith Dep.") at 40, 43, 44.  Gulf Coast claims that it was unable to contact him.  *Id.* at 45.  James disputes Gulf Coast's claim.  Rather, according to James, on or around March 25, he received news of a family emergency.  James Dep. at 92-93.  In an effort to get to his family, the next day, James notified QC after-hours dispatch of his need to take a leave of absence.  Doc. 41-7.  After notifying dispatch of the emergency, James delivered his last load on March 27, arrived at the QC facilities in Louisiana on March 28, turned in his paperwork, and parked the Truck in the yard for his temporary leave of absence.  James Dep. at 178-83.

Regardless, after a week of allegedly being unable to reach James, Gulf Coast assumed that James had abandoned his contractual responsibilities.  Smith Dep. at 52-54.  Accordingly, on March 29, 2011, Gulf Coast decided to cancel the Lease Agreement and exercise its contractual right to take possession of the Truck.  *Id.*; Lease Agmt. ¶¶ 23(f), 24(c).  Because James had dropped the Truck off the previous day, Gulf Coast contacted James to tell him to remove his personal belongings from the Truck.  James Dep. at 170; Warner Dep. at 50-51.  James failed to do so,

however, because the Truck was locked in QC's garage, to which he had no access.  Warner Dep. at 61, 63; James Dep. at 81-82.

On or about March 30, 2011, Gulf Coast began to have the Truck cleaned out and Rowland's belongings removed.  Smith Dep. at 55-56.  While cleaning the Truck, Brian Reel, a mechanic for Gulf Coast, claims to have discovered a large number of razor blades hidden throughout the Truck, and claims to have suffered a laceration to his hand from one of the razor blades.  Doc. 36 ("Reel Dep.") at 17-19, 28, 36-37.  Reel reported the injury to his direct manager, and ultimately, Gulf Coast's Terminal Manager, Lareishia Smith, decided to call the police.  Reel Dep. at 19; Smith Dep. at 57-59.

The police arrived that same day, and investigated the scene, interviewed witnesses, and completed a narrative report.  Ex. 18 to James Dep.; Smith Dep. at 58-59, 65, 69.  James was not present and had no personal knowledge of what was said during any of the interviews.  James Dep. 124.  During the investigation, the police learned that another Gulf Coast employee, Brian Schexnayder, claimed to have been injured by sulfuric acid left in a hose in the Truck while trying to remove the hose from the Truck.  Doc. 37 ("Schexnayder Dep.") at 18-21.

On April 5, 2011, the police arrested James on an outstanding warrant.  James Dep. at 112; Ex. 17 to James Dep.  James was subsequently tried in November 2011 on two counts of aggravated battery, but was found not guilty after a one day jury trial.  Exs. 16, 19, and 20 to James Dep.; James Dep. at 126-28.

In his Complaint, filed in February 2014, James alleges two Counts:  Count I alleges a breach of contract claim against QC; and Count II alleges that QC's employees maliciously instigated and continued the criminal proceedings against him.  Defendants now move for summary judgment as to both Counts.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact.  *Id.* at 324.  Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party.  *Celotex*, 477 U.S. at 323.  However, a party cannot defeat summary judgment by relying upon conclusory allegations.  *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. App'x 852, 858 (11th Cir. 2006).

### III.   DISCUSSION

#### A.   Breach of Contract

To prevail on a breach of contract claim, a plaintiff must show: "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).

Defendants argue that they are entitled to summary judgment for three reasons: *first*, James lacks standing to bring a breach of contract claim; *second*, the specific contract alleged to have been breached was never actually terminated; and *third*, even assuming *arguendo* that there had been a breach of contract, James fully mitigated any damages.

The Court agrees that James lacks standing to bring a breach of contract claim.  To begin with, it is undisputed that the parties to the Lease Agreement and the IC Agreement were Gulf Coast and *2BBG Express*, and QC and *2BBG Express*, respectively.  *See* Lease Agmt. at 12 (signature page lists "2BBG Express" as the "Lessee," and "Rowland James" as the CEO); IC Agmt. at 10 (signature page lists "2BBG Express" as the "Independent Contractor," and "Rowland James" as the CEO).[3]  Under either Florida law or Louisiana law—the only two states' laws that could possibly apply here—James cannot bring a lawsuit on behalf of 2BBG Express.  *See* Fla. Stat. § 608.462 ("A member of a limited liability company is not a proper party to proceedings by or against a limited liability company . . . ."); La. Rev. Stat. § 12:1320(C) (a member or officer of a limited liability company "is not a proper party to a proceeding by or against a limited liability company . . . .").  Therefore, there is no contract upon which James, as an individual, can bring suit.

---

[3] Notably, the Complaint alleges only the breach of the IC Agreement.  *See* Doc. 1 ¶¶ 12, 75. For the sake of argument, however, the Court will continue its analysis as if James had also alleged a breach of the Lease Agreement.

James nevertheless argues that he can bring a breach of contract claim because, under Florida law, he is a third party beneficiary to the contracts. James is wrong. Florida law makes clear that a third party may bring a claim for breach of contract only if the "clear intent and purpose of the contract" was to "directly and substantially benefit the third party." *Thompson v. Commercial Union Ins. Co. of N.Y.*, 250 So. 2d 259, 262 (Fla. 1971). Moreover, the contracting parties' intent to benefit the third party must be specific and must be clearly expressed in the contract. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). Here, there is no evidence that, in entering the contracts, the "clear intent and purpose" of the contracting parties—2BBG Express and Gulf Coast or QC—was to "directly and substantially" benefit James. Indeed, James points to no contractual language that would support his conclusory assertion. In the total absence of any such language, James cannot be considered a third party beneficiary to the contracts, and accordingly has no legally enforceable rights in the contracts.[4]

For the reasons stated above, Defendants are entitled to summary judgment as to Count I.[5]

## B.    Malicious Prosecution

Defendants argue that they are entitled to judgment as a matter of law on the claim for malicious prosecution because it is untimely and baseless. As to their first contention, Defendants argue that, pursuant to Florida's borrowing statute, the Louisiana statute of limitations applies, and that under Louisiana's statute of limitations for malicious prosecution, James' claim has expired. In response to this point, James argues that, according to the IC Agreement, Florida choice of law

---

[4] In conducting this analysis, the Court does not decide whether Florida law applies to both contracts, but addresses only the argument specifically raised by James—that he is a third party beneficiary "[u]nder *Florida law*." Doc. 40 at 9 (emphasis added).

[5] Having found that James has no right to enforce either of the contracts, the Court need not (and does not) address whether the contract specifically alleged to have been breached was actually terminated, or whether any damages stemming from the alleged breach were mitigated.

provisions do not apply, so the Florida statute of limitations applies, and his claim has not yet expired under the Florida statute of limitations.

After careful consideration, the Court agrees with Defendants that James' claim is time-barred. *First*, the forum-selection clause of the IC Agreement does not apply here. The full language of that provision states, as follows:

> [QC] and [2BGG Express] understand and agree that ***this Agreement*** shall be governed by and construed under the laws of the State of Florida, without regard to the choice of law provisions thereof. The exclusive venue for any action arising from, or brought to enforce, ***this Agreement*** shall be Hillsborough County, Florida and the state and federal courts located therein. The parties irrevocably submit to the personal and subject matter jurisdiction of said courts. [2BGG Express] waives its right to a jury trial to resolve any lawsuit it may ever bring against [QC], and agrees that any such lawsuit will be tried by a judge without a jury. [2BGG Express] also waives its right to participate as a member in any class action lawsuit against [QC] or act as a representative of a class of similarly situated persons in any lawsuit against [QC].

IC Agmt. ¶ 24 (emphases added). The language of the provision thus makes clear that it applies only to claims that relate to "this Agreement"—the IC Agreement. James' malicious prosecution claim is independent of and unrelated to the IC Agreement. Accordingly, the clause excluding the consideration of "choice of law provisions" does not apply to James' malicious prosecution claim. *See, e.g.*, *SAI Ins. Agency, Inc. v. Applied Sys., Inc.*, 858 So. 2d 401, 403 (Fla. 1st DCA 2003) (where choice of law provision provided that "the agreement shall be governed by and interpreted in accordance with the laws of Illinois," the substantive law of Illinois did not necessarily govern other disputes between the parties).

James asserts that ambiguities in a contract are generally to be construed against the drafter of the contract. However, although James is correct on the law, *see City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000), he fails to identify any ambiguities or suggest how any purported ambiguities should be construed. James also argues that, because the breach of contract claim he

originally filed in Louisiana was dismissed on the grounds that it failed to comply with the forum-selection clause, declining to apply that clause here in Florida would be manifestly unjust. However, as is clear from the language of the clause, it applies to claims that relate to the IC Agreement—such as James' breach of contract claim—and does not apply to claims that do not relate to the IC Agreement—such as James' malicious prosecution claim.

*Second*, Florida's borrowing statue applies here.  That statute provides that "[w]hen the cause of action arose in another state . . . and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state."  Fla. Stat. § 95.10.  Here, all of the events relevant to the alleged malicious prosecution—the police investigation, the arrest, and the trial—were initiated, and occurred, in Louisiana.  James' cause of action for malicious prosecution therefore arose in Louisiana.  *See Korman v. Kent*, 821 So. 2d 408, 410 (Fla. 4th DCA 2002) ("[T]he malicious prosecution of a legal action takes place where the action is maliciously filed or maintained . . . . The cause of action is complete upon the instant that the person was dragged or kept in the court where the maliciously brought or maintained action was pending.").

*Third*, James' malicious prosecution claim would be barred by the Louisiana statute of limitations.  Under Louisiana law, a claim for malicious prosecution is subject to a one year statute of limitations.  *See* La. Civ. Code Ann. art. 3492; *Murray v. Town of Mansura*, 940 So. 2d 832, 838 (La. App. 3 Cir. 2006).   The cause of action arises, and the prescription begins to run, when the underlying prosecution is dismissed or terminated.  *See Matthews v. City of Bossier City*, 963 So. 2d 516, 520 (La App. 2 Cir. 2007) (the "one-year prescriptive period" arises upon "the termination of the prosecution.").  Here, the prescription began to run in November 2011, when James was acquitted at trial, and expired in November 2012.  This action, however, was not filed

until February 2014—well after the expiration of the November 2012 deadline.   Therefore, pursuant to Florida's borrowing statute, "no action shall be maintained in this state."

For the reasons stated above, Defendants are entitled to judgment as a matter of law as to Count II.[6]

## IV.    CONCLUSION

This is an action that was apparently brought by some combination of the wrong party against the wrong defendant at the wrong time.   Regardless of whether James (and/or 2BBG Express) may be entitled to some sort of relief from some entity, the Complaint before this Court fails to assert a claim that is legally cognizable.

It is hereby **ORDERED AND ADJUDGED**:

1.    Defendants' Dispositive Motion for Summary Judgment (Doc. 31) is **GRANTED**.

2.    The Clerk is directed to enter judgment in favor of Quality Distribution, Inc. and Quality Carriers, Inc., and against Rowland E. James.

3.    The Clerk is further directed to terminate all pending motions and deadlines, and to close this case.

**DONE AND ORDERED** in Tampa, Florida on August 24, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

---

[6] Having found that James' claim for malicious prosecution cannot be maintained here, the Court need not (and does not) address whether it otherwise lacks merit.